**STINVIL LAW**
Frasilie Stinvil (Atty ID #18553-2018)
41 Madison Avenue, Suite 2503
New York, NY 10010
Tel.: (646) 647-6266
Fax.: (516) 706-3987
E.: attorney@stinvillaw.com

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Al Tariq Muhammad, | No.: |
| Plaintiff, | **COMPLAINT** |
| v. | and Jury Demand |
| GEO Secure Services, LLC and GEO Group, Inc., | |
| Defendants. | |

This is an employment discrimination matter. The Plaintiff is Al Tariq Muhammad (hereinafter referred to as "Plaintiff" or "Mr. Muhammad"). The Defendants are the GEO Group Inc. (hereinafter "Geo Group") and GEO Secure Services, LLC ("Geo Secure") ( collectively, "Defendants" or " GEO"). Plaintiff alleges associational disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD").

## JURISDICTION

1. The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

2. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

3. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

## VENUE

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because one or more of the parties are located within this District. Moreover, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

5. Plaintiff Mr. Muhammad resides in East Orange, New Jersey, and is a person with a disability under the Americans with Disabilities Act and New Jersey Law Against Discrimination.

6. Defendant GEO Group, Inc., headquartered in Boca Raton, Florida, specializes in providing privatized correctional and detention management, community re-entry services, and behavioral and mental health services to government agencies worldwide.

7. At all times relevant, Plaintiff employment was at Delaney Hall Detention Facility located in Newark, New Jersey, which is operated by Defendant GEO Secure Services, LLC, a subsidiary of The GEO Group, Inc

8. GEO Secure provides supervision programs for adult probationers, parolees, and pretrial defendants in residential, in-custody, and non-residential reentry centers.

9. Upon information and belief, Defendants are employer within the meaning of relevant laws that employs more than sixty (60) employees.

## EXHAUSION OF ADMINISTRATIVE REMEDIES

10. Plaintiff exhausted her administrative remedies.

11. On October 12, 2021, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

12. After more than 180 days had passed, Plaintiff requested a Notice of Right to Sue from the EEOC. Mr. Muhammad received his Notice of Right to Sue from the EEOC on December 15, 2022; this letter is attached as Exhibit A. This action was filed within ninety days of Plaintiff receipt of his Notice of Right to Sue.

## FACTUAL BACKGROUND

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Mr. Muhammad suffers from progressive polyneuropathy, which limits his ability to work extensive hours, excessive being more than 5 days a week and more than 8 hours in a day.

15. Mr. Muhammad has been an Operation Counselor/Monitor for over ten years.

16. In December 2008. Mr. Muhammad was hired as Operations Counselor/ Monitor by the Community Education Centers.  Initially he was employed by Community Education Center under the position, in or about 2017 GEO Residential Reentry Services purchased the company from Community Education Centers. He remained onboard in the same position.

17. Plaintiff Al Tariq Muhammad (hereinafter "Mr. Muhammad") declares that former employer, The GEO Group, Inc., wrongfully terminated him, committed various acts of discrimination based on age, disability and failure to accommodate, which is in violation of Family and Medical Leave Act (hereinafter "FMLA").

18. As an Operation Counselor/ Monitor, Mr. Muhammad worked the third shift (11pm to 7am).  He took an initial count of the resident/ inmates at the residential facility. He would then be responsible for monitoring the workers that were entering the building to ensure no contraband was entering the premises.

19. When Mr. Muhammad was stationed at the main reception, he monitored the cameras to check for any violation of faculty security and opened the gates and closed them for Parole Officers who would transfer former or new residents in or out of the facility. Overall, his position was mostly stationary in nature.

20. In or about December 2020, Mr. Muhammad was experiencing some pain which affected his walking after long periods in the day. He went to his primary doctor because he was concerned about his health. Dr. Muhammad G. Ayub explained to Mr. Muhammad that he suffers from progressive polyneuropathy which limits his ability to work extensive hours, excessive being more than 8 hours in a day.

21. In February 2021, Mr. Muhammad's primary care physician Dr. Muhammad G. Ayub provided him a physician note and request for accommodation due to disability. The accommodation was that Mr. Muhammad should not work overtime. He could complete his shift, yet the occasional overtime would be too long, given his progressive polyneuropathy condition.

22. Mr. Muhammad submitted the accommodation request to his supervisor.

23. On or about February 25, 2021, Mr. Muhammad physician completed the Certification of Health Care Provider for Employee's Serious Health Condition form to be submitted to the U.S. Department of Labor.

24. In the form Mr. Muhammad's physician notified the Department of Labor of his lifelong condition and requested his hours of employment be minimized to 5 days a week, 8 hours a day for the duration of a year from the date February 25, 2021. Mr. Muhammad's physician also stated that his condition would not prevent him from performing his job functions.

25. Soon after, on or about March 4, 2021, Mr. Muhammad received a letter from his employer, GEO, stating they were concerned that his medical condition would affect his ability to effectively perform the essential functions of his position. Therefore, GEO requested a "Fit for Duty" questionnaire, which his physician had to complete.

26. The "Fit for Duty" questionnaire was requested even after Mr. Muhammad's physician stated in the Certification of Health Care Provider for Employee's Serious Health Condition form that his condition would not prevent him from performing his job functions.

27. Nonetheless Mr. Muhammad complied with his employer's request. On or about March 8, 2021, his physician submitted the "Fit for Duty" form.

### FAILURE TO ACCOMMODATE MEDICAL CONDITION

28. On or about April 6, 2021, Mr. Muhammad had a meeting with Human Resources concerning his condition and future employment position. Upon arriving Ms. Maslenko put him on a two way with Diane Trillo. Ms. Trillo stated Mr. Muhammad would not be able to get his requested accommodations. Instead, GEO was giving him 12-week leave off work pursuant to the FMLA guidelines.

29. In the meeting Defendants stated that Mr. Muhammad's current medical condition would not allow him to perform the essential functions of his job, therefore GEO would be unable to accommodate his request. Additionally, GEO argued that the essential job function as described to him was that he must work overtime.

30. GEO had failed to accommodate Mr. Muhammad's polyneuropathy medical condition.

31.  Due to GEO's failure to engage in cooperative dialogue Mr. Muhammad was placed on a 12-week leave from work pursuant to a FMLA guidelines. Mr. Muhammad was told that he had no other choice but to be placed on FMLA leave.

32. On or about July 8, 2021, a letter was written by Mr. Muhammad's employer, GEO, stating if he did not provide a notice of intent to return to work by July 19, 2021, he would be subjected to voluntary resignation.

33. GEO failed to provide reasonable accommodations to Mr. Muhammad and pushed him out of his position.

34. Subsequently, Mr. Muhammad was terminated.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Disability Discrimination in Violation of the**
**Americans with Disabilities Act**
**(42 U.S.C. §§ 12101, et seq.)**

35. Mr. Muhammad incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

36. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

37. At all times relevant to this action, Defendants have been a covered entity and an employer for purposes of Title I of the ADA. 42 U.S.C. § 12111(2) and (5)(A).

38. At all times relevant herein, Mr. Muhammad was and is a "qualified individual" with a disability who, with or without reasonable accommodation, can perform the essential functions of his' employment position. 42 U.S.C. § 12102(1)-(2), 12111(8), 29 C.F.R. § 1630.2(g) and (m).

39. Discrimination "against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

40. The ADA further prohibits "utilizing standards, criteria, or methods of administration− (A) that have the effect of discrimination on the basis of disability . . ." 42 U.S.C. § 12112(b)(3)(A).

41. An employer must provide reasonable accommodation to its employees with disabilities and is required to engage in an interactive process with an employee who needs reasonable accommodations when such process is necessary to determine the appropriate accommodation. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(o)(1)(3).

42. The interactive process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

43. "Reasonable accommodation" includes "[m]odifications or adjustments to the work environment, . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" or "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(ii)–(iii).

44. "Reasonable accommodation" may include but is not limited to "[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities" and other accommodations such as "the acquisition or modifications of equipment or devices." 29 C.F.R. § 1630.2(o)(2)(i)–(ii).

45. In violation of Mr. Muhammad's rights under the ADA to be free from disability-based discrimination in employment, Defendants failed to provide reasonable accommodations to Mr. Muhammad. 42 U.S.C. § 12112(a), (b)(5)(A); 29 C.F.R. § 1630.9(a), (e).

46. Mr. Muhammad requested reasonable accommodations, and Defendants knew or should have known that accommodation was needed. Defendants failed to accommodate Mr. Muhammad and failed to implement policies, procedures, and practices to ensure that he was provided with accommodations.

47. Defendants discriminated against Mr. Muhammad on the basis of his disability by discriminating against him in regard to the terms, conditions and privileges of his employment in violation of 42 U.S.C. § 12112(a); limiting, segregating, or classifying him in a way that adversely affects his opportunities or status in violation of 42 U.S.C. § 12112(b)(1); using standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability in violation of 42 U.S.C. § 12112(b)(3)(A); and failing to make reasonable accommodations in violation of 42 U.S.C. § 12112(b)(5)(A). See also 29 C.F.R. §§ 1630.4(a), 1630.5, 1630.9(a), (e).

48. In failing to accommodate Mr. Muhammad, Defendants violated the ADA. 29 C.F.R. § 1630.9(a), (e); 29 C.F.R. § 1630.2(o)(1), (2), (4).

49. In failing to engage in a timely and good faith interactive process with Mr. Muhammad to determine effective reasonable accommodations, Defendants violated the ADA. 29 C.F.R. § 1630.2(o)(1)-(3).

50. As a direct and proximate result of the unlawful acts described herein, Mr. Muhammad has suffered and continues to suffer injuries including emotional distress, anxiety, frustration, sleeplessness, fatigue, stress, and feelings of marginalization and dehumanization.

51. As a result of these violations, pursuant to 42 U.S.C. §§ 12205, 12117, Mr. Muhammad is entitled to recover compensatory damages, declaratory and injunctive relief, attorneys' fees and costs, and other appropriate relief as determined by this court.

**SECOND CAUSE OF ACTION**
**Discrimination Based on Disability**
**in Violation of the Rehabilitation Act of 1973**
**(29 U.S.C. § 794(a))**

52. Mr. Muhammad re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

53. Mr. Muhammad is an "individual with a disability" within the meaning of the Rehabilitation Act because he has a physical impairment that substantially limits one of more major life activities. 29 U.S.C. § 705(20)(A), (B); 34 C.F.R. § 104.3(j)(i).

54. Upon information and belief at all relevant times, the GEO was and is a corporation or activity that receives federal financial assistance for purposes of Section 504 and thereby is prohibited from subjecting a qualified person with a disability to discrimination in employment. 29 U.S.C. § 794(b); 34 C.F.R. § 104.11(a)(1).

55. At all times during his employment, Mr. Muhammad was and is fully qualified for, and met or exceeded the performance requirements and expectations for, all aspects of his position.

56. Defendants failed to make reasonable accommodations necessary to accommodate Mr. Muhammad disability in violation of Section 504. 34 C.F.R. § 104.12. "Reasonable accommodation" may include making facilities readily accessible and usable by employees with disabilities. See 34 C.F.R. § 104.12(b)(1).

57. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of his or her disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

58. Plaintiff suffered adverse employment actions in the form of first constructive discharge then termination because of his disability.

59. As a direct and proximate result of these unlawful acts, Mr. Muhammad has suffered and continues to suffer damages, including emotional distress.

60. As a result of these violations, pursuant to 29 U.S.C. § 794a, Mr. Muhammad is entitled to recover compensatory damages, declaratory and injunctive relief, attorneys' fees and costs, and other appropriate relief as determined by this court.

### THIRD CAUSE OF ACTION
### Declaratory Relief

61. Mr. Muhammad re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

62. A present and actual controversy exists between Mr. Muhammad and Defendants concerning their rights and respective duties. Mr. Muhammad contends that Defendants violated his rights under the ADA, Section 504.

63. Defendants disagree with Mr. Muhammad contention.

64. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### FOURTH CAUSE OF ACTION
### New Jersey Law Against Discrimination (NJLAD)

70. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

71. The NJLAD protects employees from discrimination based on association with others who have disabilities. See Valenti v. Maher Terminals LLC, No. 14-7897, 2015 U.S. Dist. LEXIS 84358 (D.N.J. June 30, 2015); Downs v. U.S. Pipe & Foundry Co., 441 F. Supp. 2d 661 (D.N.J. 2006).

72. Plaintiff has a disability that qualifies for protection under the ADA and the NJLAD

73. In the alternative, Plaintiff was perceived as disabled upon his diagnosis.

74. Defendants discriminated against Plaintiff.

75. Defendants created a hostile work environment for Plaintiff by targeting him and terminating him.

76. Upon information and belief, but-for Plaintiff's medical condition, he would not have been subjected to a hostile work environment.

77. The hostile work environment continued up to and including Plaintiff's termination.

78.  No legitimate, non-discriminatory reason exists for Defendants' treatment of Plaintiff.

79. Defendants, by and through its agents and employees, discriminated against Plaintiff on account of his disability in violation of the NJLAD.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*

80. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment:

1.  Punitive damages ( where applicable);

2.  Compensatory damages;

3.  Awarding reasonable attorneys' fees and costs;

4.  Pre and post judgment interest;

5.  An allowance to compensate for negative tax consequences;

6.  An allowance to compensate for negative tax consequences;

7.  A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and NJLAD.

8.   Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

9.  Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from

Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

10. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

11. Demand is hereby made for a trial by jury as to all issues.

12. Such other relief as the Court deems necessary, just, and proper.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Dated: March 15, 2023

**STINVIL LAW P.L.L.C.,**

By:    ___/s/ Frasilie Stinvil_____
Frasilie Stinvil, Esq.,
Attorney For Plaintiff
41 Madison Avenue, Suite 2503
New York, NY 10010
Tel.: (646) 647-6266
E.: attorney@stinvillaw.com